IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY CHROMEY,       :
                    :
       Plaintiff    :   CIVIL NO. 4:11-CV-00103
                    :
   v.               :
                    :
MICHAEL J. ASTRUE,     :
COMMISSIONER OF SOCIAL  :   (Judge Rambo)
SECURITY,          :
                    :
       Defendant    :

## MEMORANDUM AND ORDER

## Background

Plaintiff, Zachary Chromey, is seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income benefits.

Supplemental security income (SSI) is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income.

Chromey was born in the United States on December 21, 1990. Tr. 43, 123-124 and 128.[1]  Chromey appears to have completed secondary school through at least the tenth grade and can read, write, speak and understand English. Tr. 104 and 356.  The record reveals that Chromey had learning and behavioral difficulties as a child. Tr. 236-251.  Chromey earned a General Equivalency Diploma in February, 2009. Tr. 221.  Chromey has no employment or earnings history. Tr. 132 and 377.

As a child, Chromey was approved for SSI benefits effective May 1, 2005, because of attention deficit hyperactivity disorder.[2] Tr. 43.  After Chromey reached

---

1.  References to "Tr.___" are to pages of the administrative record filed by Defendant as part of his answer on March 24, 2011.

2.  According to the website of the National Institute of Mental Health "[a]ttention deficit hyperactivity disorder (ADHD) is one of the most common childhood disorders and can continue through adolescence and adulthood. Symptoms include difficulty staying focused and paying attention, difficulty controlling behavior, and hyperactivity (over-activity)." Attention Deficit Hyperactivity Disorder (ADHD), National Institute of Mental Health, http://www.nimh.nih.gov/health/publications/attention-deficit-hyperactivity-disorder/complete-index.shtml (Last accessed January 9, 2012).

the age of 18, the Commissioner, as required by statute, reviewed whether Chromey was entitled to continue to receive SSI benefits.[3]  Chromey alleged a continuing disability because of back pain, a sleeping disorder, and mental health issues.  Tr. 44 and 46.

Based on a review of the evidence, the Commissioner concluded that Chromey was no longer disabled as of January 20, 2009.  This review involved several steps.  First, there was an initial records review by the Bureau of Disability Determination[4] which resulted in a finding that Chromey was no longer disabled. Tr. 44-45 and 83-90.[5]  However, his SSI benefits did not immediately terminate. Tr. 87.  On February 1, 2009, Chromey elected to continue receiving

---

3.  This claim for SSI benefits was reviewed using the adult disability standards. 20 C.F.R. § 416.987(b).

4.  The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania that initially evaluates applications for SSI benefits on behalf of the Social Security Administration.

5.  The Bureau of Disability Determination reviewed, *inter alia*, forms submitted by Chromey's mother, medical records, and a report of a consultative examination by a licensed psychologist.

SSI payments until the conclusion of the administrative proceedings. Tr. 87 and 118-119.

After the initial review by the Bureau of Disability Determination, Chromey had the right to request reconsideration which involved a hearing before a Disability Hearing Officer (DHO). Tr. 88.  On February 4, 2009, Chromey filed a request for reconsideration and a hearing was scheduled for May 28, 2009. Tr. 91-92 and 95.  Chromey did not appear at the hearing and the DHO, in a decision dated May 28, 2009, concluded that, based on the evidence in the file, Chromey was not disabled. Tr. 100-106.  On June 4, 2009, Chromey was notified of the decision and his right to request a hearing before an administrative law judge. Tr. 107-109.

On June 5, 2009, Chromey filed a request for a hearing before an administrative law judge. Tr. 110.  A hearing was held before an administrative law judge on February 5, 2010. Tr. 351-384.  At that hearing, Chromey, who was 19 years old at the time, was advised

in detail of his right to have counsel represent him.[6] Tr. 356-362.  Chromey, after being so advised, waived his right to counsel and proceeded with the hearing. Tr. 362.

On May 5, 2010, the administrative law judge issued a decision finding that Chromey's "disability ended on January 20, 2009, and [that he had] not become disabled again since that date." Tr. 21-33.  On May 12, 2010, Chromey filed a request for review with the Appeals Council. Tr. 5-7.  On November 19, 2010, the Appeals Council concluded that there was no basis upon which to grant Chromey's request for review. Tr. 5-7. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Chromey then filed a complaint in this court on January 14, 2011.  Supporting and opposing briefs were

---

6.  Chromey also received documents prior to the hearing detailing his right to representation. Tr. 114-115.

5

submitted and the appeal[7] became ripe for disposition on June 6, 2011, when Chromey filed a reply brief.

For the reasons set forth below, the decision of the Commissioner is affirmed.[8]

**Standard of Review**

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner.  See <u>Poulos v. Commissioner of Social Security</u>, 474 F.3d 88, 91 (3d Cir. 2007); <u>Schaudeck v. Commissioner of Social Sec. Admin.</u>, 181 F.3d 429, 431 (3d Cir. 1999); <u>Krysztoforski v. Chater</u>, 55 F.3d 857,

---

7.  Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

8.  Chromey signed the complaint filed in this case but what appears to be a supporting brief (Doc. 8) and a reply brief (Doc. 10) were not signed by Chromey. Rather, they were submitted and signed by Chromey's mother.  Chromey's mother contends that she has a "Limited Power of Attorney." Doc. 8, p. 3. Although only attorneys properly admitted to practice law or law students under appropriate circumstances can represent a party before this court, in deciding this appeal, the court has considered the entire record and the documents filed by Chromey's mother. The Commissioner raised no objection to our consideration of those documents.

858 (3d Cir. 1995).  However, our review of the
Commissioner's findings of fact pursuant to 42 U.S.C. §
405(g) is to determine whether those findings are
supported by "substantial evidence."  Id.; Brown v.
Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v.
Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual
findings that are supported by substantial evidence must
be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247
F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of
fact are supported by substantial evidence, we are bound
by those findings, even if we would have decided the
factual inquiry differently."); Cotter v. Harris, 642
F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the
Secretary must be accepted as conclusive by a reviewing
court if supported by substantial evidence.");  Keefe v.
Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v.
Apfel, 270 F.3d 171, 176 (4th Cir. 2001);  Martin v.
Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir.
1990).

     Substantial evidence "does not mean a large or
considerable amount of evidence, but 'rather such

7

relevant evidence as a reasonable mind might accept as
adequate to support a conclusion.'" Pierce v. Underwood,
487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co.
v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v.
Commissioner of Social Security, 529 F.3d 198, 200 (3d
Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d
Cir. 1999).  Substantial evidence has been described as
more than a mere scintilla of evidence but less than a
preponderance.  Brown, 845 F.2d at 1213.  In an
adequately developed factual record, substantial
evidence may be "something less than the weight of the
evidence, and the possibility of drawing two
inconsistent conclusions from the evidence does not
prevent an administrative agency's finding from being
supported by substantial evidence." Consolo v. Federal
Maritime Commission, 383 U.S. 607, 620 (1966).

     Substantial evidence exists only "in
relationship to all the other evidence in the record,"
Cotter, 642 F.2d at 706, and "must take into account
whatever in the record fairly detracts from its weight."
Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488

(1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A). Furthermore,

[a]n individual shall be determined to be

9

under a disability only if his physical or
mental impairment or impairments are of
such severity that he is not only unable to
do his previous work but cannot,
considering his age, education, and work
experience, engage in any other kind of
substantial gainful work which exists in
the national economy, regardless of whether
such work exists in the immediate area in
which he lives, or whether a specific job
vacancy exists for him, or whether he would
be hired if he applied for work.  For
purposes of the preceding sentence (with
respect to any individual), "work which
exists in the national economy" means work
which exists in significant numbers either
in the region where such individual lives
or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in
evaluating supplemental security income claims.  See 20
C.F.R. § 416.920; Poulos, 474 F.3d at 91-92.  The first
step involves the determination of whether or not the
claimant has engaged in substantial gainful activity.
However, this first step is not utilized when
determining whether an individual who received child SSI
disability benefits and reached the age of 18 is still
disabled. 20 C.F.R. § 416.987(b).

The remaining sequential evaluation process
requires the Commissioner to consider whether a claimant

(1) has an impairment that is severe or a combination of impairments that is severe,[9] (2) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[10] (3) has the

---

9. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 416.923 and 416.945(a)(2).

10.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled.  If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listed impairment, an applicant for benefits may still be found disabled at a later step in
(continued...)

residual functional capacity to return to his or her past work and (4) if not, whether he or she can perform other work in the national economy. Id.  As part of step four, the administrative law judge must determine the claimant's residual functional capacity. Id.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is

_____

10.  (...continued)
the sequential evaluation process.

still able to do despite the limitations caused by his
or her impairment(s).").

**Discussion**

      The administrative law judge noted that the
first step of the sequential evaluation process is
inapplicability in this case because this step is not
used for redetermining a disability at age 18. Tr. 22.

      At step two of the sequential evaluation
process, the administrative law judge found that Chromey
had two severe impairments: primary hypersomnia[11] and low
back pain.  Tr. 23.

      At step three of the sequential evaluation
process, the administrative law judge found that
Chromey's impairments did not individually or in

---

11.  Primary hypersomnia is a sleep disorder where the
individual has "excessive sleepiness for at least 1
month as evidence by prolonged sleep episodes or by
daytime sleep episodes occurring almost daily. . . .
The duration of the major sleep episode . . . may range
from 8 to 12 hours and is often followed by difficulty
awakening in the morning."  Diagnostic and Statistical
Manual of Mental Disorders: DSM-IV-TR, 604 (4th ed.).

combination meet or equal a listed impairment. Tr. 23-25.

At step four of the sequential evaluation process, the administrative law judge recognized *sub silentio* that Chromey had no prior work experience and found that Chromey had the residual functional capacity to perform a limited range of light work as defined in the regulations.[12]  Tr. 25.  In so finding, the

────────────────────

12.  The terms sedentary, light, medium, heavy and very heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of

(continued...)

administrative law judge primary relied on the

evaluation of William F. Anzalone, Jr., Psy.D., a

---

12.  (...continued)
> performing a full or wide range of light work,
> you must have the ability to do substantially
> all of these activities. If someone can do
> light work, we determine that he or she can
> also do sedentary work, unless there are
> additional limiting factors such as loss of
> fine dexterity or inability to sit for long
> periods of time.
>
> (c) *Medium work*.  Medium work involves lifting
> no more than 50 pounds at a time with frequent
> lifting or carrying of objects weighing up to
> 25 pounds. If someone can do medium work, we
> determine that he or she can do sedentary and
> light work.
>
> (d) *Heavy work*.  Heavy work involves lifting no
> more than 100 pounds at a time with frequent
> lifting or carrying of objects weighing up to
> 50 pounds. If someone can do heavy work, we
> determine that he or she can also do medium,
> light, and sedentary work.
>
> (e) *Very heavy work*.  Very heavy work involves
> lifting objects weighing more than 100 pounds
> at a time with frequent lifting or carrying of
> objects weighing 50 pounds or more.  If someone
> can do very heavy work, we determine that he or
> she can also do heavy, medium, light and
> sedentary work.

20 C.F.R. § 416.967.

licensed psychologist, who found that Chromey only had
moderate difficulties in concentration, persistence and
pace. Tr. 292.  The administrative law judge in his
decision considered the mother's opinion of her son's
abilities and found that opinion suspect.  The
administrative law judge stated as follows:

> [T]he totality of the evidence reveals that
> the claimant has a desire to work, but his
> ambitions may be impeded by his mother. For
> example, the claimant informed Dr. Anzalone
> that he enjoys music and working on
> automobiles. He indicated that he may be
> interested in attending a trade school for
> automobile mechanics. In addition, he
> reported that he is interested in gaining
> employment after earning his GED and said
> that he would be interested in working
> locally at first in something like a "Wal-
> Mart Store" but ultimately he would like to
> find employment in music.  However, his
> mother informed Dr. Anzalone that he will
> have difficulty maintaining employment
> because of his sleep disorder and if he
> does not like the job "he will quit."
>
> On the basis of the foregoing, the
> undersigned gave great weight to the
> findings of Dr. Anzalone in both the report
> he prepared on the consultative examination
> and the claimant's mental residual
> functional capacity assessment. As a
> result, the undersigned considered Dr.
> Anzalone's findings when issuing the

residual functional capacity cited herein
and limited the claimant to performing
simple, routine work in a predictable work
setting that is of a moderate production
pace.

Tr. 30-31.  To address Chromey's mental problems
(primarily the effects of hypersomnia), the
administrative law judge limited Chromey to performing
simple, routine, light work in a predictable work
setting which involved a moderate production pace.

Based on the above residual functional capacity,
Chromey's age and education, and the testimony of a
vocational expert, the administrative law judge found at
step five of the sequential evaluation process that
Chromey could perform work as a packager, assembler, and
inspector, and that there were a significant number of
such jobs in the local, state and national economies.
Tr. 32.

The administrative record in this case is 384
pages in length.  The court has thoroughly reviewed the
entire record.  The court finds that the administrative
law judge thoroughly reviewed Chromey's alleged symptoms

17

and medical records in his decision. Tr. 25-30.
Furthermore, the brief submitted by the Commissioner
adequately reviews the medical and vocational evidence
in this case. (Doc. 9, Brief of Defendant.)  Chromey
makes a rather general argument that his physical and
mental problems prevent him from engaging in any type of
work.[13]  Following a thorough review of the record in
this case, the court finds no merit in Chromey's
arguments.

Initially, it should be noted that no treating
or examining physician or psychologist has indicated
that Chromey is unable to engage in full-time employment

13. This argument was presented by his mother; the
court has not heard directly from Chromey. The mother
noted that his "major problem is his sleep disorder and
it always was." (Doc. 10, Plaintiff's Brief, p. 1.)
Chromey's mother also argues that her son suffers from
agoraphobia and that the administrative law judge
ignored testimony of the vocational expert.  With
respect to the last argument, Chromey's mother contends
that the vocational expert testified that there was no
work that her son could perform. These arguments are
devoid of merit.  There is no medical evidence that
Chromey suffers from agoraphobia (which is a fear of
being outside alone or in public places where escape
would be difficult) and the vocational expert clearly
identified jobs that Chromey can perform. Tr. 380.

for the requisite statutory period of 12 months because of his physical and mental impairments.  Likewise, no treating physician has provided a functional assessment indicating that Chromey cannot engage in the physical requirements of light work.  To the contrary, the record reveals that two psychologists, Dennis C. Gold, Ph.D., and Anthony Galdieri, Ph.D., who diagnosed Chromey in January and March, 2009, respectively, as suffering from attention deficit hyperactivity disorder and primary hypersomnia, indicated that Chromey "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." Tr. 309 and 330.  Both of these psychologist also found (as did Dr. Anzalone) that Chromey only had moderate difficulties in concentration, persistence and pace. Tr. 303, 306, 325 and 328-329.

Furthermore, Chromey was examined for his alleged sleep disorder by Alexander Villareal, M.D., on January 29, 2010. Tr. 338-343.  When Dr. Villareal

conducted a review of Chromey's systems,[14] Chromey denied

any problems other than backache.  Tr. 340-341.  Chromey

specifically denied weakness or fatigue.  Id.  The

results of Chromey's physical examination were

completely normal. Tr. 341.  When Dr. Villareal examined

Chromey's back, he made no positive findings of

weakness, tenderness or muscular spasms.  Id.  He merely

stated as follows: "Back symmetric, no curvature, No CVA

tenderness."[15]  Id.

In his report regarding Chromey's examination,

Dr. Villareal also indicated that Chromey played the

_____

14.  "The review of systems (or symptoms) is a list of
questions, arranged by organ system, designed to
uncover dysfunction and disease." A Practical Guide to
Clinical Medicine, University of California, School of
Medicine, San Diego, http://meded.ucsd.edu/
clinicalmed/ros.htm (Last accessed January 9, 2012).

15.  "CVA" refers to the costovertebral angle which is
the acute angle formed between the lowest rib and the
vertebral column. Pain at this area is usually
attributed to kidney disease. Costovertebral Angle -
definition of costovertebral angle in the Medical
Dictionary - by the Free Online Dictionary, Mosby's
Medical Dictionary, 8th Edition, 2009, http://medical
-dictionary.thefreedictionary.com/costovertebral+angle
(Last accessed January 9, 2012).

drums for two different bands and rehearsed in his room for approximately two hours each day. Tr. 338-340. Chromey also watches television, uses a computer, plays video games, visits with his friends and lifts weights three times per week. Id.  Chromey admitted using marijuana 5 months prior to the appointment, drinking 2-5 beers once a month, smoking a pack of cigarettes per day, and drinking 2 bottles of soda per day (containing caffeine). Tr. 340.  Dr. Villareal opined that there were several factors (without specifying the factors) that were responsible for Chromey's ability to sleep normally. Tr. 342.  At a follow-up visit, Dr. Villareal recommended that Chromey remove the computer, drums, television, DVD player, and gaming system from his room and avoid sleeping between 12 noon and 12 midnight. Tr. 348.

Chromey testified that he suffers from lower back pain. Tr. 362-364.  When asked what he does to alleviate the pain, he stated that all he does is "take

an aspirin or something." Tr. 363.  When asked how often
he had back pain, he was unable to give an answer.  <u>Id.</u>

The record reveals that Chromey only received
treatment (physical therapy) for his alleged back pain
from August 2005 to September 2005. Tr. 259-270.  During
some of the treatments, Chromey reported that his pain
level, on a scale of 0 to 10, was 0. <u>Id.</u>

In February, 2008, Chromey was involved in a
motorcycle accident where he allegedly injured his ribs.
Tr. 271-273.  After that accident, Chromey had no
complaints regarding his back. Tr. 272.  He had normal
range of motion in the neck and an examination of his
back revealed "no deformity, no midline tenderness" and
"no CVA tenderness." <u>Id.</u>  Chromey takes no narcotic pain
medications, there are no radiographs indicating an
abnormal spinal condition, and there have been no
recommendations of surgical intervention.

The court discerns nothing in the medical
records that suggests that Chromey is unable to engage
in the physical demands of light work.  Chromey

22

testified that he is completely independent regarding his personal care and assists with the care of two cats. Tr. 198 and 372. Furthermore, Chromey helps with housework and yardwork, including mowing the lawn and weed whacking. Tr. 369.  Chromey's alleged back problem does not prevent him from going shopping and carrying bags of groceries. Tr. 195 and 197.

The administrative law judge stated that Chromey's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ability to perform a limited range of light work. Tr. 26.  The administrative law judge was not required to accept Chromey's claims regarding his limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make).  It is well-established that "an [administrative law judge's] findings based on the

23

credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." <u>Walters v. Commissioner of Social Security</u>, 127 F.3d 525, 531 (6th Cir. 1997); <u>see</u> <u>also</u> <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed Chromey when he testified at the hearing on February 5, 2010, the administrative law judge is the one best suited to assess the credibility of Chromey.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. The court will, therefore, pursuant to 42 U.S.C. § 405(g), affirm the decision of the Commissioner.[16]

_____

16. At step two of the sequential evaluation process, the administrative law judge did not address Chromey's

(continued...)

An appropriate order will be entered.


                              s/Sylvia H. Rambo
                              SYLVIA H. RAMBO
                              United States District Judge

Dated:  January 17, 2012.

_____

     16.  (...continued)
attention deficit hyperactivity disorder. The failure
to consider all medically determinable impairments at
step two of the sequential evaluation process can be
reversible error. As noted in footnote 9, *supra*, all
medically determinable impairments, severe and non-
severe, are to be considered in the subsequent steps of
the sequential evaluation process.  The failure of the
administrative law judge to find a condition as a
medically determinable impairment, or to give an
adequate explanation for discounting it, can make the
subsequent steps of the sequential evaluation process
defective. See, e.g., Christenson v. Astrue, Civil No.
10-1192, slip op. at 11-12 (M.D.Pa. May 18, 2011)(Muir,
J.) In this case, the administrative law judge's
failure to address Chromey's attention deficit
hyperactivity disorder was harmless error because Dr.
Gold, Dr. Galdiera and Dr. Anzalone diagnosed Chromey
with that condition and still concluded that he only
had moderate difficulties with concentration,
persistence and pace. Furthermore, Dr. Gold and Dr.
Galdiera specifically stated that Chromey "is able to
meet the basic mental demands of competitive work on a
sustained basis despite the limitations resulting from
his impairment." Tr. 309 and 330; see, e.g., Weary v.
Astrue, Civil No. 10-896, slip op. at 40-41 (M.D.Pa.
Dec. 15, 2010)(Muir, J.)(applying harmless error
analysis).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ZACHARY CHROMEY,                   :
                                   :
          Plaintiff                :     CIVIL NO. 4:11-CV-00103
                                   :
     v.                            :
                                   :
MICHAEL J. ASTRUE,                 :
COMMISSIONER OF SOCIAL             :     (Judge Rambo)
SECURITY,                          :
                                   :
          Defendant                :


ORDER AND JUDGMENT

       In accordance with the accompanying memorandum,

IT IS HEREBY ORDERED THAT:

       1.  The Clerk of Court shall enter judgment in

favor of the Commissioner and against Zachary Chromey as

set forth in the following paragraph.

       2.  The decision of the Commissioner of Social

Security denying Zachary Chromey supplemental security

income benefits is affirmed.


1

    3.   The Clerk of Court shall close this case.


 s/Sylvia H. Rambo        
United States District Judge

Dated:  January 17, 2012.